27 P.3d 636 (2001)
107 Wash.App. 462
STATE of Washington, Respondent,
v.
Heather R. BOSIO, Appellant.
No. 19347-1-III.
Court of Appeals of Washington, Division 3, Panel Nine.
July 26, 2001.
Susan M. Gasch, Spokane, for Appellant.
Kevin M. Korsmo, Andrew J. Metts, III, Deputy Prosecuting Attorneys, Spokane, for Respondent.
KURTZ, C.J.
Heather Bosio was driving 10 to 15 miles per hour over the speed limit when she failed to negotiate a curve and struck a telephone pole. The passenger in her car was seriously injured. Tests showed Ms. Bosios blood alcohol level was .23. Ms. Bosio was convicted of vehicular assault. She appeals contending the court erred by (1) admitting the results of the blood test when the State failed to establish that the blood samples were properly preserved and free from adulteration, and (2) failing to instruct the jury on the lesser-included offense of first degree negligent *637 driving. We conclude that the State failed to make a prima facie showing that Ms. Bosio's blood sample was properly preserved. We reverse Ms. Bosio's conviction and remand for a new trial.

FACTS
Heather Bosio and her friend, Cary Sittner, went to Goodtymes bar to celebrate Ms. Bosio's graduation from Spokane Community College. Ms. Bosio's boyfriend and a friend, Sherwood Waters, met them at the bar. Ms. Bosio consumed several rum and cokes at the bar. The group left the bar around 11:45 p.m., and Ms. Bosio drove in her car with Ms. Sittner as a passenger. Ms. Bosio sped out of the parking lot and Mr. Waters followed in his car. Ms. Bosio proceeded down Montgomery Street where the speed limit is 35 miles per hour. Mr. Waters saw Ms. Bosio going about 50 miles per hour to pass another car. At that point, Montgomery curved and Ms. Bosio failed to stay on the road. She went off the road, tried to correct and then struck a telephone pole. Ms. Sittner's right arm was seriously broken in the crash.
The police officers who responded to the crash could smell intoxicants on Ms. Bosio's breath. She failed two field sobriety tests and was arrested for vehicular assault. Ms. Bosio was transported to a hospital where blood samples were drawn. Her blood alcohol results were .23. A jury convicted Ms. Bosio of vehicular assault. This appeal follows.

ANALYSIS
Lesser-included Instruction on Negligent Driving. Ms. Bosio contends that the court erred by refusing to instruct the jury on negligent driving in the first degree as a lesser-included offense of vehicular assault. A trial court's refusal to give a requested instruction, when based on the facts of the case, is a matter of discretion that will not be disturbed on review unless there is a clear showing of abuse of discretion. State v. Lucky, 128 Wash.2d 727, 731, 912 P.2d 483 (1996), overruled on other grounds by State v. Berlin, 133 Wash.2d 541, 947 P.2d 700 (1997). In general, a defendant is entitled to a jury instruction on a lesser-included offense if (1) each of the elements of the lesser offense is a necessary element of the charged offense (the legal test), and (2) the evidence supports an inference that the defendant committed the lesser offense (the factual test). State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978); State v. Newbern, 95 Wash.App. 277, 286, 975 P.2d 1041, review denied, 138 Wash.2d 1018, 989 P.2d 1142 (1999). We need not address the factual test because Ms. Bosio fails the legal test.
RCW 46.61.522(1) provides:
A person is guilty of vehicular assault if he operates or drives any vehicle:
(a) In a reckless manner, and this conduct is the proximate cause of serious bodily injury to another; or
(b) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, and this conduct is the proximate cause of serious bodily injury to another.
RCW 46.61.5249(1)(a) provides:
A person is guilty of negligent driving in the first degree if he or she operates a motor vehicle in a manner that is both negligent and endangers or is likely to endanger any person or property, and exhibits the effects of having consumed liquor or an illegal drug.
To commit vehicular assault, a driver must: drive recklessly and cause serious bodily injury or drive intoxicated and cause serious bodily injury. To commit negligent driving in the first degree, a driver must: drive negligently, endanger persons or property and exhibit effects of alcohol or drugs. First degree negligent driving is not a lesser-included offense of the first alternative means of committing vehicular assault because under that alternative, there is no requirement of signs of intoxication. First degree negligent driving is not a lesser-included offense of the second alternative means of committing vehicular assault because under that alternative there is no requirement of negligent driving. Each of the elements of negligent driving in the first degree are not necessary elements of *638 vehicular assault and the court properly denied the request for the lesser-included instruction.
Ms. Bosio cites State v. Gostol, 92 Wash. App. 832, 836, 965 P.2d 1121 (1998) which held that negligent driving is a lesser-included offense of vehicular assault. However, Gostol was decided under the 1995 negligent driving statute. In 1996, the Legislature amended the statute by (1) removing the provision describing negligent driving as a lesser-included offense of reckless driving; (2) dividing negligent driving into two offensesnegligent driving in the first degree and negligent driving in the second degree; and (3) downgrading negligent driving in the second degree to a traffic infraction. Laws of 1996, ch. 307, § 1. And, a year later, the Legislature deleted first degree negligent driving from RCW 46.61.525 and inserted it under RCW 46.61.5249. Laws of 1997, ch. 66, §§ 4, 5. Now, negligent driving in the first degree includes "exhibits the effects of having consumed liquor or an illegal drug." RCW 46.61.5249(1)(a). It can no longer be a lesser-included offense of vehicular assault.
Blood Test. Ms. Bosio contends that the results of her blood test should not have been admitted because the State failed to establish a prima facie case that the blood samples were free from adulteration and tested in accordance with the rules of the state toxicologist. She argues that the toxicologist did not testify regarding use of a blank test, an anticoagulant or an enzyme poison, and offered no testimony to show substantial compliance with the criteria set forth in WAC 448-14-020(3).
"Before blood alcohol test results can be admitted into evidence, the State must present prima facie proof that the test chemicals and the blood sample are free from any adulteration which could conceivably introduce error to the test results." State v. Clark, 62 Wash.App. 263, 270, 814 P.2d 222 (1991). The purpose of requiring the use of anticoagulants and enzyme poison in the blood sample is to prevent clotting or a loss of alcohol concentration in the sample. Id.
The regulations promulgated by the state toxicologist for analyzing blood do not specify the approved testing methods, "but rather, outlines the criteria any approved method must meet." Clark, 62 Wash.App. at 268, 814 P.2d 222. "The regulations approve the tests only if they meet strict standards for precision, accuracy, and specificity." State v. Schulze, 116 Wash.2d 154, 167, 804 P.2d 566 (1991). These uniform procedures help to ensure that the test results will be accurate and reliable.
RCW 46.61.506(3) provides:
Analysis of the person's blood ... to be considered valid ... shall have been performed according to methods approved by the state toxicologist and by an individual possessing a valid permit issued by the state toxicologist for this purpose. (Emphasis added.)
Under WAC 448-14-020(3),
(a) A chemically clean dry container consistent with the size of the sample with an inert leak-proof stopper shall be used.
(b) Blood samples for alcohol analysis shall be preserved with an anticoagulant and an enzyme poison sufficient in amount to prevent clotting and stabilize the alcohol concentration. (Emphasis added.)
WAC 448-14-020 also requires that a blank test be run.
The State argues that it satisfied the prima facie requirement as follows: Trooper Ronald Falkner testified that two sterile vials with gray stoppers and anticoagulants in the bottom were used to collect Ms. Bosio's blood. The vials were then sealed and sent to a toxicologist. The nurse who drew the blood testified that she used Betadine to prepare Ms. Bosio's arm and she saw the anticoagulant white powder in the blood vials. The toxicologist testified that she ran a blank test. She also testified that she followed the Washington Administrative Code to analyze the blood samples. She gave a detailed breakdown of the procedures she followed on Ms. Bosio's blood test.
In State v. Garrett, 80 Wash.App. 651, 653, 910 P.2d 552 (1996), we held that "[t]he language of WAC 448-14-020(3)(b) is mandatory." In Garrett, it was undisputed that an anticoagulant was not added to the blood sample and this court affirmed the vacation of the defendant's conviction. Garrett, 80 *639 Wash.App. at 653, 910 P.2d 552. Here, there was evidence that the anticoagulant was added to the blood sample. The trooper and the nurse saw the powder in the blood vial and the blood was not coagulated. However, there is no evidence that an enzyme poison was added to the blood sample. WAC 448-14-020(3) unambiguously requires that both an anticoagulant and an enzyme poison be added to the blood sample.
We conclude that the State failed to make a prima facie showing that Ms. Bosio's blood sample was properly preserved. We reverse and remand for a new trial.[1]
WE CONCUR: SWEENEY, J., and KATO, J.
NOTES
[1] Ms. Bosio also contends that the court erred by denying her motion for dismissal or, in the alternative, for a new trial. Ms. Bosio neither briefed this issue nor cited to authority so this court will not review the issue. State v. Dennison, 115 Wash.2d 609, 629, 801 P.2d 193 (1990).