Submitted September 19, 2019; resubmitted en banc September 21, 2020; remanded for resentencing, otherwise affirmed June 3, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICARDO SANTOS RAMIREZ,
aka Sergio Martinez Gonzales,
aka Ricardo Santo Ramirez,
*Defendant-Appellant.*

Umatilla County Circuit Court
17CR39991; A167114

493 P3d 522

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010, contending, among other things, that the trial court erred in relying on two earlier out-of-state convictions in permanently revoking defendant's driving privileges under ORS 809.235(1)(b). Specifically, he contends that the trial court erred in concluding that his Washington conviction for first-degree negligent driving qualified as a predicate offense under ORS 809.235(1)(b)(B). *Held*: The trial court erred. Under ORS 809.235(1)(b)(B), an out-of-state conviction cannot serve as a predicate offense unless the offense requires proof that the person's impaired driving was causally related to the person's use of an intoxicant. The Washington offense that the trial court relied on in permanently revoking defendant's driving privileges does not have that requirement.

Remanded for resentencing; otherwise affirmed.

En Banc

Eva J. Temple, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sarah De La Cruz, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Hannah K. Hoffman, Assistant Attorney General, filed the brief for respondent.

Before Egan, Chief Judge, and Armstrong, Ortega, DeVore, Lagesen, Tookey, DeHoog, Shorr, James, Aoyagi, Powers, Mooney, and Kamins, Judges.

DeHOOG, J.

Remanded for resentencing; otherwise affirmed.

DeHoog, J., filed the opinion of the court in which Armstrong, Ortega, Lagesen, Shorr, James, Aoyagi, Powers, and Kamins, JJ., joined.

Mooney, J., dissented and filed an opinion in which Egan, C. J., and DeVore and Tookey, JJ., joined.

**DeHOOG, J.**

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010, contending, among other things, that the trial court erred in relying on two earlier out-of-state convictions in permanently revoking defendant's driving privileges under ORS 809.235(1)(b).[1] In his first assignment of error, defendant argues that the trial court erred in relying on a California judgment of conviction for DUII despite there being insufficient evidence that defendant was the person named in the judgment. In defendant's second assignment of error, he contends that the trial court erred in concluding that his Washington conviction for first-degree negligent driving qualified as a predicate offense under ORS 809.235(1)(b)(B). For the following reasons, we agree with defendant that his Washington conviction did not qualify under that statute and, therefore, remand for resentencing.[2]

The relevant facts are procedural. Defendant entered a plea of guilty to DUII without sentencing concessions from the state. At the sentencing hearing, the state argued that, although defendant's current DUII conviction did not qualify as a felony because at least one of his prior convictions was too old, he did have two previous convictions for "DUI type offenses" that, collectively, triggered the

---

[1] Under Oregon's motor vehicle laws, a person's driving privileges must be revoked upon a third or subsequent conviction for one of various driving offenses, including:

"A driving under the influence of intoxicants offense in another jurisdiction that involved the impaired driving of a vehicle due to the use of intoxicating liquor, cannabis, a controlled substance, an inhalant or any combination thereof."

ORS 809.235(1)(b)(B). The text of ORS 809.235(1)(b) is set out more fully below. 312 Or App at 122-23. Although the statute refers to revoking licenses "permanently," a driver may petition the court for reinstatement after 10 years. ORS 809.235(2).

[2] In light of our conclusion that the trial court erred in relying on defendant's Washington conviction as a basis for revoking his driving privileges, we need not further consider his first assignment of error, as it is undisputed that the mandatory revocation provision of ORS 809.235(1)(b) would not be triggered unless both the Washington and California convictions qualified as prior convictions under the statute. Furthermore, we need not address defendant's related but undeveloped argument that the trial court erred in imposing a fine, although we note that the court indicated that it was exercising its discretion in determining the amount of the fine and not strictly relying on the provisions of ORS 809.235 in doing so.

mandatory license revocation provisions of ORS 809.235 (1)(b). As relevant here, one of the convictions was for the Washington offense of first-degree negligent driving, which Washington law defines, in part, as follows:

> "(1)(a)   A person is guilty of negligent driving in the first degree if he or she operates a motor vehicle in a manner that is both negligent and endangers or is likely to endanger any person or property, and exhibits the effects of having consumed liquor or marijuana or any drug \*\*\*."

Revised Code of Washington (RCW) 46.61.5249. The state described the negligent-driving conviction as a "pled down DUI" and told the court that the underlying plea petition included defendant's admission to "operat[ing a] motor vehicle in a negligent [manner] by exhibiting the effects of consuming alcohol." The state further explained that, as a result of that conviction, defendant had been ordered to undergo alcohol and substance abuse counseling and install an ignition interlock device.

Defendant objected, arguing that the Washington conviction did not qualify as a prior conviction under ORS 809.235(1)(b). He argued that what mattered was the "crime of conviction," and not any "potential statutory equivalents" or whether the sentence that had been imposed included probation terms typical in DUII cases.

The trial court concluded that defendant's Washington conviction qualified as a predicate offense under ORS 809.235(1)(b). Recognizing that an offense's "name is not always indicative of the nature of the crime," the court expressed its understanding that, under the case law, it was required to compare the elements of the Washington offense to the elements of DUII in Oregon. After examining the Washington statute, considering its associated definitions for "negligent" and "exhibits the effects of having consumed liquor or marijuana or any drug," and comparing it to the offense of DUII in Oregon, the court concluded that the offenses were sufficiently similar. The court explained:

> "So it is not identical to driving under the influence of intoxicants, but it does basically include an element of being under the influence of alcohol and marijuana, and driving in a way that is negligent, so it's not exactly the same, but it

is * * * I would say more similar to driving under the influence than reckless driving, for example, because it includes the element of being under the influence or exhibiting the effects of consuming an intoxicant."

Based upon its conclusion that defendant's negligent-driving conviction was for an offense sufficiently similar to DUII under Oregon law, the court relied on that conviction—together with the California conviction, which it accepted as being defendant's—and permanently revoked defendant's driving privileges. Defendant now appeals, contending that the trial court erred in revoking his driving privileges based, in part, on his Washington conviction for negligent driving.

On appeal, defendant reprises his challenge to the trial court's use of his Washington conviction, but he takes a slightly different tack. Relying on our decisions in *State v. Rawleigh*, 222 Or App 121, 192 P3d 292 (2008), and *State v. Mersman*, 216 Or App 194, 172 P3d 654 (2007), *rev den*, 344 Or 390 (2008), *abrogated by State v. Guzman*, 366 Or 18, 46, 455 P3d 485 (2019), he recognizes that a "statutory counterpart" to ORS 813.010 from another jurisdiction qualifies as a predicate offense under ORS 809.235(1)(b), but he argues that the first-degree negligent driving statute does not qualify as a statutory counterpart to Oregon's DUII statute. *See* ORS 809.235(1)(b)(A)(ii) (providing that a "statutory counterpart to ORS 813.010 in another jurisdiction" is a predicate offense under ORS 809.235(1)(b)). Citing our decision in *Mersman* for the proposition that, for an out-of-state statute to qualify as a statutory counterpart to ORS 813.010, the two statutes must be "either remarkably similar or have the same use, role, or characteristics," defendant explains why, in his view, the negligent-driving statute does not satisfy that test. *Mersman*, 216 Or App at 203-04.

The state, in turn, argues that defendant's "statutory counterpart" argument is beside the point, because proving that Washington's first-degree negligent-driving statute is a statutory counterpart to ORS 813.010 is only one of several ways to establish it as a predicate offense under ORS 809.235(1)(b). *See* ORS 809.235(1)(b)(A) (treating, as predicate offenses, prior convictions under ORS 813.010

or a "statutory counterpart"). Here, the state argues, the trial court properly treated defendant's Washington conviction as a predicate offense under ORS 809.235(1)(b)(B). Citing *Dyrdahl v. DMV*, 204 Or App 509, 131 P3d 770 (2006), the state argues that that provision requires only that the out-of-state provision "criminalize activity that is 'substantially similar' to activity that Oregon considers to be 'driving under the influence.'" And, quoting a decision of the Washington Court of Appeals, the state reasons that "the Washington statute, RCW 46.61.5249(1)(a), is a 'driving under the influence of intoxicants offense' because it criminalizes driving dangerously while 'exhibit[ing] the effects of having consumed liquor or marijuana or any drug.'" *See State v. Mullen*, 186 Wash App 321, 334, 345 P3d 26 (2015) (stating, in *dictum*, that a "person may not be guilty of first degree negligent driving unless he is under the influence of alcohol or drugs").[3]

As we will explain, we agree that the state was not required to establish that the Washington statute was a statutory counterpart to ORS 813.010 for the trial court to treat it as a predicate offense. We conclude, however, that defendant's conviction for first-degree negligent driving under RCW 46.61.5249 did not fall within the provisions of ORS 809.235(1)(b)(B), the statute that the state relies on in this appeal. Accordingly, the trial court erred in relying on defendant's Washington conviction as a basis for permanently revoking defendant's driving privileges.

Before addressing that issue, we set out more completely the license-revocation provision at issue in this case. As relevant here, ORS 809.235(1) provides:

"(b)   The court shall order that a person's driving privileges be permanently revoked if the person is convicted of felony driving while under the influence of intoxicants in violation of ORS 813.010 or if the person is convicted for a third or subsequent time of any of the following offenses in any combination:

"(A)   Driving while under the influence of intoxicants in violation of:

---

[3] The relevant text of RCW 46.61.5249 is set out below. 312 Or App at 128.

"(i)   ORS 813.010;[4] or

"(ii)  The statutory counterpart to ORS 813.010 in another jurisdiction.

"(B)  A driving under the influence of intoxicants offense in another jurisdiction that involved the impaired driving of a vehicle due to the use of intoxicating liquor, cannabis, a controlled substance, an inhalant or any combination thereof.

"(C)  A driving offense in another jurisdiction that involved operating a vehicle while having a blood alcohol content above that jurisdiction's permissible blood alcohol content."

As framed by the trial court's decision and the arguments on appeal, our primary analytical task in this case is to construe ORS 809.235(1)(b)(B), and particularly to determine whether the Washington offense of first-degree negligent driving is, within the meaning of that provision, "[a] driving under the influence of intoxicants offense in another jurisdiction that involved the impaired driving of a vehicle due to the use of intoxicating liquor, cannabis, a controlled substance, an inhalant or any combination thereof." That question requires us to determine the meaning of both ORS 809.235(1)(b) and RCW 46.61.5249, and we review the trial court's application of those provisions for legal error. *See, e.g.*, *Alfieri v. Solomon*, 358 Or 383, 391, 365 P3d 99 (2015) (reviewing for legal error trial court actions that turned on proper interpretation of a statute). In performing that task, we rely, in part, on the interpretive framework set out by the Supreme Court in *State v. Gaines*, 346 Or 160, 171-72 206 P3d 1042 (2009) (evaluating statutory text in context, considering any helpful legislative history, and turning to canons of construction when necessary), and, to the degree

---

[4] Oregon's DUII statute, ORS 813.010, provides, in relevant part:

"(1)  A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a)  Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person * * *;

"(b)  Is under the influence of intoxicating liquor, cannabis, a controlled substance or an inhalant; or

"(c)  Is under the influence of any combination of intoxicating liquor, cannabis, a controlled substance and an inhalant."

it is appropriate, on Washington decisional law regarding the interpretation and meaning of that state's laws.

In arguing that defendant's negligent-driving conviction falls under ORS 809.235(1)(b)(B), the state, citing the Washington Court of Appeals' decision in *Mullen*, focuses on the first part of that provision and contends that the Washington conviction was for a "driving under the influence of intoxicants offense." Although the state quotes ORS 809.235(1)(b)(B) more completely in other parts of its brief, in our view, the state pays inadequate attention to the statutory language that closely follows the state's emphasized language of "driving under the influence of intoxicants offense," namely, the requirement that the offense be one "that involved the *impaired driving* of a vehicle *due to the use of* intoxi[cants]." ORS 809.235(1)(b)(B) (emphasis added). And, because defendant's Washington conviction cannot serve as a predicate offense unless it satisfies ORS 809.235(1)(b)(B) in full, we will focus our assessment of that provision on the latter language, without deciding whether the Washington statute might otherwise be deemed to define a "driving under the influence of intoxicants offense."[5]

We first consider the specific text of the statute. *See Gaines*, 346 Or at 171 ("[T]here is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." (Internal quotation marks omitted.)). Here, the only terms in the latter part of ORS 809.235(1)(b)(B) that appear at all susceptible to dispute are the phrases "impaired driving" and "due to the use." And, because it is ultimately dispositive, we focus our attention on the latter phrase, "due to the use," both in isolation and in the context in which it appears.

The phrase "due to the use" consists of words of common usage; thus, following our typical practice, we may consider a standard dictionary to determine how those words are ordinarily understood. *E.g.*, *State v. Baker-Krofft*, 348

_____

[5] Similarly, because the state effectively concedes that the Washington statute is not a statutory counterpart to ORS 813.010 and advances no argument that it satisfies any part of ORS 809.235(1)(b) other than ORS 809.235(1)(b)(B), we do not decide whether any other provision might have allowed the trial court to rely on the conviction as it did.

Or 655, 661, 239 P3d 226 (2010) (explaining that, when the legislature has not defined statutory terms, "we look to the dictionary to determine their ordinary meaning"). And, as it appears here, the prepositional phrase "due to" most likely means "because of." *See Webster's Third New Int'l Dictionary* 699 (unabridged ed 2002). Although the phrase "because of" also appears in the dictionary, its principle definition does not provide much, if any, clarity. *See Webster's* at 194 (defining "because of" as meaning "by reason of" or "on account of"). However, the ordinary meaning of "because" supports a preliminary understanding that the expression "due to the use" in ORS 809.235(1)(b)(B) is intended to convey an element of causation, that is, a requirement that, to fall within that provision, an offense must involve impairment (of either driving or a driver) that is *causally related* to the person's use of intoxicants. *See Webster's* at 194 (also defining "because" as "SINCE : for the reason that : on account of the cause that" and noting that the word is derived from "by + *cause*" (emphasis in original)).

Moreover, even at that first-level examination of the plain text and context of "due to the use," we are not limited to dictionary definitions for guidance as to its meaning; prior interpretations of the same or related text also inform our understanding of how the legislature likely intended those words to be understood here. *See, e.g.*, *Keller v. Armstrong World Industries, Inc.*, 342 Or 23, 35, 147 P3d 1154 (2006) (previous judicial interpretations of related statutes provide "relevant context" when construing a statute); *State v. Bryan*, 221 Or App 455, 459, 190 P3d 470 (2008), *rev den*, 347 Or 290 (2009) (previous constructions of a statute are relevant at the first stage of statutory construction). Although neither we nor the Supreme Court have construed ORS 809.235(1)(b)(B), we have case law construing comparable language in the closely related context of ORS 813.010.[6] We turn to those decisions.

---

[6] In considering whether the provisions of ORS 809.235(1)(b) encompassed convictions under the predecessor to ORS 813.010, the Supreme Court has, in passing, distinguished between ORS 809.235(1)(b)(A) and subparagraphs (B) and (C), observing that the latter described qualifying offenses that "might not be criminal in Oregon." *State v. Kellar*, 349 Or 626, 633, 247 P3d 1232 (2011). However, the meaning of ORS 809.235(1)(b)(B) was not at issue or further discussed in *Kellar*. Thus, while it is true that the 2007 amendments would likely

In Oregon, the offense of DUII, ORS 813.010, can be proved in either of two ways. One, the state can establish that a driver's blood-alcohol content (BAC) was equal to or greater than a statutory limit at the time of driving—the so called "DUII *per se*" cases. *See* ORS 813.010(1)(a) (prohibiting driving a vehicle when the driver has a BAC of .08 percent or more); *State v. Hedgpeth*, 365 Or 724, 727, 452 P3d 948 (2019) (describing prosecutions under ORS 813.010(1)(a) as "the *per se* method of proving DUII"). Two, the state can establish, under ORS 813.010(1)(b) or (c), that the driver was, at the time of driving, "under the influence" of one or more intoxicants. It is the case law construing the latter, non-DUII *per se* method of prosecution that informs our understanding of "due to the use of" intoxicants as it appears in ORS 809.235(1)(b)(B).

Both we and the Supreme Court have developed a long-standing and substantial body of DUII case law that has always required, in non-DUII *per se* cases, proof of both impairment and a causal relationship between a person's use of intoxicants and that impairment. *See, e.g.*, *State v. Eumana-Moranchel*, 352 Or 1, 7-8, 277 P3d 549 (2012) (to be "under the influence" of an intoxicant within the meaning of ORS 813.010(1)(b), a person must be shown to be "*adversely affected by intoxicants* to a perceptible degree" (emphasis added)); *State v. Stroup*, 147 Or App 118, 124, 935 P2d 438 (1997) (noting, in determining that officer lacked probable cause to arrest defendant for DUII, that nothing in record "suggest[ed] a *correlation between* defendant's" circumstances "and a mental or physical impairment *because of* the consumption of alcoholic beverages" (emphases added)); *see also State v. Sinkey*, 303 Or App 673, 678, 465 P3d 284 (2020) ("To constitute probable cause [to support a DUII arrest], there must be information from which a law enforcement officer could conclude that it is more likely than not that defendant drove while he was physically or mentally impaired."); *State v. Snyder*, 288 Or App 58, 62, 405 P3d 175 (2017), *rev den*, 362 Or 508 (2018) (a person who is shown to

---

encompass such things as a conviction on a DUII *per se* theory in a state that had a .05 percent statutory BAC limit—that is, conduct that would not, as such, "be criminal in Oregon"—*Kellar* does not aid our inquiry as to whether a statute such as RCW 46.61.5249 fits within the newer provisions.

have driven after consuming alcohol but who is not shown to be adversely affected by that alcohol or to have a BAC of at least 0.08 percent "has not committed a crime"). And, as the Supreme Court observed in *State v. Guzman*, 366 Or 18, 46, 455 P3d 485 (2019), "[t]he perceptible degree standard has been part of our law for close to a century." (Internal quotation marks omitted.)

To be sure, the cases cited above all relate to ORS 813.010, and not ORS 809.235(1), the Oregon statute at issue here. Nonetheless, those cases and others like them support our preliminary understanding that, in referring, in ORS 809.235(1)(b)(B), to a driving under the influence offense involving impaired driving "due to the use of" intoxicants, the legislature was contemplating out-of-state offenses that, like DUII in Oregon, involved proof of both impairment and a correlation between a driver's use of intoxicants and that impairment. *See Guzman*, 366 Or at 31 (recognizing, as contextual support for a particular reading of a statute, Court of Appeals decisions construing same or similar language); *cf. id.* at 34 (applying "the canon of consistent usage," which is "the principle that, in the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently"). And, although the statutory phrases "impaired driving" and "due to the use of [intoxicants]" are not themselves phrases that appear in other statutes, it stands to reason that their placement in a DUII-related statute reflects the legislature's awareness of our case law repeatedly discussing those essential aspects of a DUII prosecution.[7]

In light of the foregoing, we understand ORS 809.235(1)(b)(B) to encompass out-of-state offenses only to the degree that those offenses require proof that a person or the person's driving was impaired by the person's use of intoxicants.[8] We turn then, to whether the Washington

_____

[7] Except as reflected in the above decisional law, we are aware of no legislative history that might inform our understanding of ORS 809.235(1)(b)(B).

[8] Because we ultimately conclude that the Washington offense at issue in this case did not satisfy the "due to" component of ORS 809.235(1)(b)(B), we need not separately determine whether what must be "impaired" due to the person's use of intoxicants is the driver, the driving, or both.

offense of first-degree negligent driving, RCW 46.61.5249, satisfies that requirement.

As with our examination of ORS 809.235, we begin by considering the text of RCW 46.61.5249, which provides, in relevant part:

"(1)(a)  A person is guilty of negligent driving in the first degree if he or she operates a motor vehicle in a manner that is both negligent and endangers or is likely to endanger any person or property, and *exhibits the effects* of having consumed liquor or marijuana or any drug ***.

"*****

"(2)   For the purposes of this section:

"(a)   'Negligent' means the failure to exercise ordinary care, and is the doing of some act that a reasonably careful person would not do under the same or similar circumstances or the failure to do something that a reasonably careful person would do under the same or similar circumstances.

"(b)   *'Exhibiting the effects of having consumed* liquor, marijuana, or any drug' *means that a person has the odor* of liquor, marijuana, or any drug *on his or her breath, or* that by speech, manner, appearance, behavior, lack of coordination, or *otherwise* exhibits that he or she has consumed liquor, marijuana, or any drug, *and* either:

"(i)   *Is in possession of or in close proximity to a container* that has or recently had liquor, marijuana, or any drug in it; *or*

"(ii)   Is shown by other evidence *to have recently consumed* liquor, marijuana, or any drug."

RCW 46.61.5249 (emphases added).

On its face, it is difficult to see how, if at all, Washington's negligent-driving offense *requires* proof of a causal relationship between a person's use of an intoxicant and the impairment of the person or the person's driving.[9]

---

[9] Like Oregon, Washington follows an established methodology when construing statutes. *See State v. Dennis*, 191 Wash 2d 169, 172-73, 421 P3d 944 (2018). In Washington, as in Oregon, the words of a statute are paramount and taken at face value. *Id*. at 172. Thus, when "interpret[ing] a criminal statute," Washington courts "give it a literal and strict interpretation." *Id*. (internal quotation marks

While it may well be true that, in most instances, the prosecution of a person charged with first-degree negligent driving will include evidence that the person or the person's driving was impaired by (or "due to") intoxicants, nothing in the statute defining that offense appears to require that showing. Indeed, RCW 46.61.5249 does not, on its face, appear to require actual impairment of any sort, much less impairment "*due to the use* of" intoxicants, as ORS 809.235(1)(b)(B) explicitly contemplates. (Emphasis added.)

As the emphasized language of RCW 46.61.5249 suggests, a person may be convicted of first-degree negligent driving under that statute based merely upon a showing of ordinary negligence if, in conjunction with that showing, the person also has an "odor of liquor * * * on his or her breath" and is *near* ("in possession of or in close proximity") to "a container that has or recently had liquor, marijuana, or any drug in it." RCW 46.61.5249(2)(b) (defining "'Exhibiting the effects of having consumed liquor * * *'"). Stated differently, although the Washington statute recognizes, as evidence of "the effects of having consumed liquor," arguable manifestations of impairment, such as any telltale aspects of a person's "speech, manner, appearance, behavior, lack of coordination," etc., *id.*, it does not *require any* evidence of impairment, because impairment is not an element of that offense.

Under the plain language of RCW 46.61.5249, any number of scenarios might satisfy the elements of first-degree negligent driving, even where the charged incident does not involve impairment due to the use of intoxicants, as we have determined ORS 809.235(1)(b)(B) requires.[10] Consider, for example, a person who, as part of a religious

---

omitted); *id.* at 172-73 ("We derive the legislative intent of a statute solely from the plain language" of the text in its statutory context.). *Unlike* Oregon courts, Washington courts may not consider legislative history unless the statutory text is ambiguous. *Id.*; *see Gaines*, 346 Or at 172-73 (in light of 2001 amendments to ORS 174.020, Oregon courts may consider legislative history for what it may be worth even in absence of ambiguity).

[10] We note that, under analogous circumstances, the Supreme Court has similarly considered hypothetical scenarios in determining whether the defendant's convictions under a California statute were for offenses "comparable" to a qualifying Oregon offense for purposes of the sentence enhancement provisions of ORS 137.719(3)(b)(B). *See State v. Carlton*, 361 Or 29, 35, 388 P3d 1093 (2017).

observance, takes a sip of sacramental wine, then drives home with her husband's medical prescription on the car seat next to her. Or the designated driver who drinks only nonalcoholic beer on a night out with friends but picks up a six-pack on the way home. Or a conscientious wine-lover who tastes but never drinks the wine at tastings, but always buys a bottle before leaving. Or even a liquor-store patron who takes half a sip from a sample of local whiskey, then leaves the store with a bottle of Jack Daniels. Assume then, that as each of those people drives home, he or she suffers a momentary lapse of attention, resulting in a fender-bender at a red light or some other such minor accident.

Under each scenario, even though alcohol impairment played no role in the incident—because very little or no alcohol had been consumed, much less enough to cause perceptible impairment or trigger even the strictest statutory limit—there seems to be little doubt that the driver could be prosecuted for first-degree negligent driving under RCW 46.61.5249. That is, the person would have (1) "operat[ed] a motor vehicle in a manner that is *** negligent" (momentarily failing to watch); (2) "endanger[ed another] person or property" (the other vehicle and its occupants); and (3) "exhibit[ed] the effects of having consumed liquor" by (a) having "the odor" of the sipped, tasted, or alcohol-free beverages "on his or her breath," RCW 46.61.5249(2)(b), *and* (b) being "in possession of or in close proximity to a container that has or recently had liquor, marijuana, or any drug in it," RCW 46.61.5249(2)(b)(i), namely, the bottles of beer, wine, or whiskey that each had purchased or, in the case of the first person, the prescription drugs belonging to her husband. Thus, under the plain language of the Washington statute, it is apparent that a person can be convicted of first-degree negligent driving without engaging in any conduct that, as least under the plain text of RCW 46.61.5249, can be viewed as "*impaired* driving of a vehicle *due to the use* of intoxi[cants]." *See* ORS 809.235(1)(b)(B) (applying only to such convictions). The dissent views our reliance on hypotheticals as an attempt "to illustrate why a conviction for first-degree negligent driving in Washington does not *involve* impairment due to intoxicants." 312 Or App at 138 (Mooney, J., dissenting) (emphasis added). But that is

not our point. As we acknowledge above, most convictions for that offense probably do "involve" impairment due to intoxicants. The point we seek to illustrate, however, is that there is a considerable difference between an offense that *often* involves impairment and one for which proof of impairment is *required*, *i.e.*, an offense that necessarily involves impairment. As the foregoing discussion concludes, only the latter type of offense is one that satisfies ORS 809.235(1)(b)(B).

Resisting the conclusion that first-degree negligent driving is *not* such an offense, the state relies on the Washington Court of Appeals' decision in *Mullen* to support its argument that, notwithstanding the plain language of RCW 46.61.5249, a conviction under that statute qualifies as a predicate offense under ORS 809.235(1)(b)(B). For two reasons, we find that reliance misplaced. Ultimately, we conclude that, even assuming that we ordinarily would defer to the construction of an out-of-state statute by the other state's appellate courts to determine whether the statute fit within ORS 809.235(1)(b)(B),[11] Washington's decisional law is not helpful in that regard; that is, because that case law simply adheres to the plain language of RCW 46.61.5249, which, as we have just concluded, lacks any apparent causal element, it does not illuminate whether such an element is nonetheless required.

First, although the court in *Mullen* observes in passing that the offense of first-degree negligent driving requires the state to prove that a driver drove "under the influence of alcohol or drugs," 186 Wash App at 334, the meaning of RCW 46.61.5249 was not at issue in that case. Rather, the

---

[11] The Supreme Court has taken somewhat of a hybrid approach. In *Carlton*, for example, the court considered whether the defendant's convictions under a California statute were for offenses "comparable" to a qualifying Oregon offense for purposes of the sentence enhancement provisions of ORS 137.719(3)(b)(B). 361 Or at 35. In ultimately concluding that the California offense was not comparable (because it had one fewer conduct element than the qualifying Oregon sexual offense and could be committed through "even outwardly innocent touching"), the court cited a decision of the California Supreme Court to that effect. *Id*. at 44. Even then, however, the Oregon Supreme Court seems to have relied initially on its own examination of the California statute and not wholly deferred to the California court's interpretation. *See id*. Notably, in *Carlton*, the court began its analysis with an extensive exploration of the meaning of the applicable Oregon statute, ORS 137.719(3)(b)(B), before turning to the question whether the California statute at issue fell within its ambit. 361 Or at 35-43.

issue in *Mullen* was whether the defendant, who previously had been convicted of *reckless* driving under a different statute, was entitled to a jury instruction requiring the jury to determine whether the defendant had been previously convicted of an offense involving alcohol or drugs. 186 Wash App at 325-26. The court's reference to RCW 46.61.5249 was in passing and clearly intended only as a contrasting example of an offense that, unlike the offense for which the defendant had previously been convicted, did involve alcohol or drugs. *Id*. at 333-34. As a result, it was *dictum*, and not a binding statement of law. *See Guzman*, 366 Or at 28 (explaining that "the term *dictum* refers to a statement that is not necessary to the court's decision" (internal quotation marks omitted)).

Second, even if the observation in *Mullen* were not *dictum*, it would seem unlikely to be viewed as a correct statement of Washington law. As noted above, 312 Or App at 128 n 9, Washington courts must construe statutory language strictly, and, unless there is an ambiguity in the text, they may not resort to legislative history or otherwise give statutes something other than a "literal and strict interpretation." *State v. Dennis*, 191 Wash 2d 169, 172-73, 421 P3d 944 (2018). As the foregoing discussion illustrates, there are no apparent ambiguities in the relevant text of RCW 46.61.5249. As a result, construing that statute to add an "under the influence" element would seem to deviate from Washington law. And, although it would not be our role to correct a Washington court's statement of Washington law, if, in fact, the statement in *Mullen* were a holding, that understanding counsels against relying on the passing reference to RCW 46.61.5249 in that case as somehow controlling here.

In urging a different result, the dissent, 312 Or App at 137-38 (Mooney, J., dissenting), relies on two other Washington appellate decisions, *State v. Bosio*, 107 Wash App 462, 27 P3d 636 (2001), and *State v. Wu*, 194 Wash 2d 880, 453 P3d 975 (2019), but neither of those opinions supports the dissent's view that a conviction under RCW 46.61.5249 falls within the scope of ORS 809.235(1)(b)(B). First, in *Bosio*, the defendant was prosecuted under

Washington law for vehicular assault after she crashed the car she had been driving and seriously injured her passenger's arm; subsequent testing disclosed that the defendant's BAC was .23 percent. 107 Wash App at 463-64. At trial, the defendant requested that the jury be instructed on the elements of first-degree negligent driving as a lesser-included offense. *Id*. The appellate court held that the trial court had not erred in refusing that request. *Id*. at 466.

The court explained that vehicular assault could be established based on either of two theories: (1) that the person drove *recklessly* and caused serious bodily injury, or (2) that the person drove *intoxicated* and caused serious bodily injury. *Id*. at 465 (citing RCW 46.61.522(1)). To establish first-degree negligent driving, on the other hand, the state was required to prove that the person drove *negligently*, endangered persons or property, and "exhibit[ed] effects of alcohol or drugs." *Id*. Applying Washington's case law as to lesser-included offenses, the court determined that first-degree negligent driving was not a lesser-included offense of vehicular assault, because not every element of first-degree negligent driving was a necessary element of vehicular assault. *Id*. at 465-66.

Specifically, as to the intoxicated-driving theory of vehicular assault, the court reasoned that it was not necessary to prove that the person drove negligently, which was an element of first-degree negligent driving. *Id*. Therefore, the crime of first-degree negligent driving was not a lesser-included offense to the crime of vehicular assault when charged on an intoxicated-driver theory. And, as the dissent observes, 312 Or App at 137 (Mooney, J., dissenting), the court reached a similar conclusion as to the reckless-driving theory of vehicular assault:

> "To commit negligent driving in the first degree, a driver must: drive negligently, endanger persons or property and exhibit effects of alcohol or drugs. First degree negligent driving is not a lesser-included offense of the [reckless-driving] means of committing vehicular assault because under that alternative, there is no requirement of signs of intoxication."

*Bosio*, 107 Wash App at 465.

The dissent emphasizes *Bosio*'s reference to "signs of intoxication" and suggests (without expressly saying so) that the Washington court's reference to "signs of intoxication" expressed its view that something more than the statutorily defined "exhibit[ing of] the effects of having consumed" intoxicants is required to prove negligent driving. 312 Or App at 137-38 (Mooney, J., dissenting). However, in a later passage in *Bosio*, the court dispels any such belief. In explaining why an earlier decision holding that negligent driving *was* a lesser-included offense of vehicular assault was no longer controlling, the court noted that, due to intervening legislative changes, first-degree negligent driving now "includes [the additional element of] 'exhibits the effects of having consumed liquor or an illegal drug.'" *Id.* at 466 (quoting RCW 46.61.5249(1)(a)). In other words, rather than holding that the negligent driving required *more* than the statutorily defined exhibiting of effects, the court was merely observing *that* requirement, itself, which, the court correctly indicated, is not an aspect of vehicular assault under Washington law.

The Washington Supreme Court's decision in *Wu* lends even less support for the dissent's view. In relevant part, *Wu* simply states that "[n]egligent driving includes as an *express* element that the person 'exhibits the effects of having consumed liquor.'" 194 Wash 2d at 888 (quoting RCW 46.61.5249(1)(a) (emphasis added)). In other words, the court was simply quoting the language of the statute, not construing it, not even in *dictum*. And, although, like the dissent, we see no reason that the Washington Supreme Court would inaccurately quote the statute—and agree that it did not— that observation does nothing to support the dissent's conclusion that the Washington law is one that "involv[es] the impaired driving of a vehicle due to the use of intoxi[cants]," as ORS 809.235(1)(b)(B) requires.

The dissent concludes by recounting the sentencing proceedings in this case, including the prosecutor's description of defendant's Washington conviction as a "pled down DUI." 312 Or App at 140 (Mooney, J., dissenting). Echoing the language of the Washington statute, the dissent emphasizes that, in his Washington case, defendant "'exhibit[ed] the effects of having consumed alcohol,'" *id.* (Mooney, J.,

dissenting), but the dissent does not take issue with our conclusion that, under RCW 46.61.5249(1)(a), the element of "exhibits the effects of having consumed liquor" can be established without proving impairment. Finally, based on the prosecution's unopposed recitation of the contents of defendant's Washington judgment of conviction, the dissent concludes that "the Washington conviction was appropriately before the court and available for it to consider as it formulated defendant's sentence." 312 Or App at 141 (Mooney, J., dissenting). But, as the dissent itself acknowledges, defendant has never contended that the conviction was not "properly before the court." *See id.* (Mooney, J., dissenting). Rather, defendant contends—as we conclude—that the conviction itself does not satisfy the requirements of ORS 809.235(1)(b)(B). Whether or not the prosecutor's comments were evidence on which the trial court could base factual findings—a matter that we need not consider—the dissent has not persuaded us that the prosecutor's recitation of the elements of first-degree negligent driving as they appeared in the judgment of conviction somehow supports a different conclusion.

In sum, under ORS 809.235(1)(b)(B), an out-of-state conviction cannot serve as a predicate offense unless the offense requires proof that the person's impaired driving was causally related to the person's use of an intoxicant. The Washington offense that the trial court relied on in permanently revoking defendant's driving privileges does not have that requirement. Accordingly, the trial court erred.

Remanded for resentencing; otherwise affirmed.

**MOONEY, J.,** dissenting.

Defendant pleaded guilty to driving under the influence of intoxicants (DUII). ORS 813.010. At the time of sentencing, his driving privileges were permanently revoked because he had been convicted of impaired driving twice before, once in California and once in Washington. ORS 809.235(1)(b). Defendant argues, and the majority agrees, that his license should not have been revoked because the Washington conviction does not qualify as a predicate offense under ORS 809.235. I respectfully disagree. In my

view, the Washington conviction is a predicate offense and defendant's license was properly revoked.[1]

ORS 809.235(1)(b)[2] requires permanent revocation of driving privileges when

"the person is convicted for a third or subsequent time of any of the following offenses in any combination:

"(A)   Driving while under the influence of intoxicants in violation of:

"(i)   ORS 813.010; or

"(ii)   The statutory counterpart to ORS 813.010 in another jurisdiction.

"(B)   A driving under the influence of intoxicants offense in another jurisdiction that involved the impaired driving of a vehicle due to the use of intoxicating liquor, cannabis, a controlled substance, an inhalant or any combination thereof.

"(C)   A driving offense in another jurisdiction that involved operating a vehicle while having a blood alcohol content above that jurisdiction's permissible blood alcohol content."

The relevant provision here is ORS 809.235(1)(b)(B), which requires that the conviction be for an offense "that involved the impaired driving of a vehicle due to the use of intoxicating liquor." The question is whether defendant's conviction under Revised Code of Washington (RCW) 46.61.5249 constitutes such a qualifying predicate offense. The majority concludes that it does not; I conclude that it does.

---

[1] Although the majority does not reach defendant's other assignments of error, I would also find that the California conviction was a predicate offense and that, regardless of whether this was defendant's first, second, or third DUII conviction, the fine imposed was within the permissible statutory range. ORS 813.010(6); ORS 161.635(1)(a).

[2] The language used in ORS 809.235(1)(b) is virtually identical to several other statutes that enhance penalties for those repeatedly convicted of impaired driving and reflects a statewide sentencing policy for those repeat offenders. *See, e.g.*, ORS 813.010(5) (increasing crime of DUII from a misdemeanor to a felony); ORS 813.215 and ORS 813.220 (disqualifying individuals from DUII diversion programs); ORS 809.730 (allowing for a motor vehicle to be seized); ORS 813.430 (increasing the length of driving privilege suspension (1) related to refusal or failure of a breath or blood test and (2) before a hardship permit may issue).

To qualify as a predicate offense under ORS 809.235(1)(b)(B), defendant's conviction for first-degree negligent driving under RCW 46.61.5249 must have "involved" impaired driving due to the use of intoxicants. RCW 46.61.5249 provides, in relevant part:

"(1)(a)  A person is guilty of negligent driving in the first degree if he or she operates a motor vehicle in a manner that is both negligent and endangers or is likely to endanger any person or property, and exhibits the effects of having consumed liquor or marijuana or any drug or exhibits the effects of having inhaled or ingested any chemical, whether or not a legal substance, for its intoxicating or hallucinatory effects.

"* * * * *

"(2)  For the purposes of this section:

"* * * * *

"(b)  'Exhibiting the effects of having consumed liquor, marijuana, or any drug' means that a person has the odor of liquor, marijuana, or any drug on his or her breath, or that by speech, manner, appearance, behavior, lack of coordination, or otherwise exhibits that he or she has consumed liquor, marijuana, or any drug, and either:

"(i)  Is in possession of or in close proximity to a container that has or recently had liquor, marijuana, or any drug in it; or

"(ii)  Is shown by other evidence to have recently consumed liquor, marijuana, or any drug."

In *State v. Bosio*, 107 Wash App 462, 465, 27 P3d 636 (2001), the Washington Court of Appeals described negligent driving in the first degree as follows:

"To commit negligent driving in the first degree, a driver must: drive negligently, endanger persons or property and exhibit the effects of alcohol or drugs. First degree negligent driving is not a lesser-included offense of the first alternative means of committing vehicular assault because under that alternative, there is no requirement of signs of intoxication."

In other words, "signs of intoxication" are required for negligent driving in the first degree. In *State v. Wu*, 194

Wash 2d 880, 888, 453 P3d 975 (2019), the Supreme Court of Washington stated that "[n]egligent driving includes as an express element that the person 'exhibits the effects of having consumed liquor.'" (Quoting RCW 46.61.5249.) And, although *Wu* concerned felony DUII, and its discussion of negligent driving was *dictum*, I can think of no reason why its description of negligent driving under RCW 46.61.5249 would be inaccurate. What is clear from the text of the statute and *Bosio* and *Wu* is that, in Washington, the crime of negligent driving in the first degree includes (1) negligent driving, (2) endangerment, and (3) exhibited effects of alcohol or drugs.

The majority nevertheless concludes that impairment is not required for a conviction under RCW 46.61.5249 and, because of that, it is not an offense involving impaired driving due to the use of alcohol or drugs. 312 Or App at 130-31. It presents a series of hypothetical scenarios to illustrate why a conviction for first-degree negligent driving in Washington does not involve impairment due to intoxicants. But the question is whether, during sentencing, the trial court erred in concluding that defendant's conviction for first-degree negligent driving in Washington qualifies as a predicate offense under ORS 809.235.

It is important to understand that, prior to 2007, ORS 809.235(1)(b) and similar statutory provisions increased or enhanced penalties only when the defendant had been previously convicted of (1) DUII in Oregon under ORS 813.010 or (2) "[t]he statutory counterpart to ORS 813.010" of another jurisdiction. But, in 2007, House Bill (HB) 2651 expanded the reach of those statutes by adding the language currently found in subparagraphs (B) and (C) of ORS 809.235(1)(b), quoted above, ORS 813.010(5)(a), ORS 809.730(1)(a), ORS 813.215(1)(a), ORS 813.220(7)(a), and ORS 813.430. *See* Or Laws 2007, ch 879, § 4.

The Supreme Court, in *State v. Kellar*, 349 Or 626, 633, 247 P3d 1232 (2011), provides a historical overview of the evolution of those statutory provisions that supports the conclusion that the scope of ORS 809.235(1)(b) and similar provisions was expanded in 2007 by the passage of HB 2651:

"Two of the 2007 legislative changes bear mention. First, the legislature omitted the term 'misdemeanor,' found in the 2003 and 2005 versions of ORS 809.235, as a limitation on the DUII convictions that can serve as predicate convictions for the purposes of ORS 809.235. Second, the legislature added subparagraphs (B) and (C), which expanded the category of DUII offenses from other jurisdictions that will result in the permanent revocation of a person's driver's license to include acts that violate that jurisdiction's DUII laws *but that might not be criminal in Oregon.*"

(Emphasis added.) The majority opinion discounts the importance of the history and context of ORS 809.235 carefully outlined by the Supreme Court in *Kellar*, and it dismisses that court's conclusion that a predicate offense from another jurisdiction need not be a criminal offense in Oregon as a mere observation made "in passing." 312 Or App at 126 n 6. And, yet, the history and evolution of ORS 809.235 is as important here as it was in *Kellar* to determining whether an out-of-state conviction qualifies as a predicate offense requiring a permanent license revocation.

The Supreme Court revisited that history in *State v. Guzman*, 366 Or 18, 455 P3d 485 (2019), a case concerned with the "statutory counterpart" language of ORS 813.011. In rejecting an argument by the state that, when the voters adopted ORS 813.011 in 2010, they would have understood the phrase "statutory counterpart to ORS 813.010" to include any statute with the "same use, role or characteristics" as ORS 813.010, the Supreme Court noted the 2007 amendments and quoted extensively from our decision in *State v. Donovan*, 243 Or App 187, 256 P3d 196 (2011), in which we discussed ORS 813.215(1)(a):

"The Court of Appeals explained in *Donovan* that

"'[t]hose disqualifying offenses are phrased in the disjunctive—that is, they are presented as alternative means of rendering a person ineligible for diversion. Thus, we presume the legislature intended subparagraphs (B) and (C) [the new additions] to have independent meaning from subparagraph (A) [where the term 'statutory counterpart' appears], rather than to be duplicative or illustrative of what a 'statutory counterpart' might be. Any other

interpretation would mean the amendments were merely redundant of what was already in the statute.'"

*Guzman*, 366 Or at 32-33 (quoting *Donovan*, 243 Or App at 196 (brackets in *Guzman*)).

It is clear that the 2007 amendments rejected the requirement of a direct connection to Oregon's DUII statute and expanded the type of out-of-state convictions that would qualify as predicate offenses. The majority's acknowledgment that this is not a "statutory counterpart" case is correct. But, respectfully, it seems to me that, by that acknowledgment, the court today sidesteps the importance of the legislature's decision in 2007 to broaden the scope of out-of-state convictions that qualify as predicate offenses, and it analyzes this case as if those amendments had not been made.

Defendant was not convicted under RCW 46.61.5249 for endangering persons or property by mere negligent driving. He was convicted under RCW 46.61.5249 because, in addition to driving negligently and dangerously, *he also "exhibit[ed] the effects of having consumed alcohol*." At the time of sentencing, the state described the Washington conviction for the court as follows:

> "Defendant was also convicted of Negligent Driving in the First Degree in the State of Washington in 2016. This is a pled down DUI. I've got a certified copy of the judgment showing that this was a DUII. He was ordered to attend the DUI victim's impact panel. It shows that this is a negligent driving—sorry a—a DUI judgment amended to Negligent Driving in the First Degree. He was ordered to obtain and use an ignition interlock device, undergo alcohol and substance classes, and he stated in his petition that on April 10th, 2016 in Pasco, Washington I did operate my motor vehicle in a negligent manner by exhibiting the effects of consuming alcohol, and in the State of Washington under their statutory system a negligent Driving in the First Degree is a predicate offense for a felony DUI. If a person were to have a negligent Driving in the First-Degree conviction, a DUI conviction, their third conviction would be a felony DUI, similar to here in the State of Oregon."

We note here that the state's counsel referred to a certified copy of the judgment that he was holding as he spoke, but he did not technically offer it into the evidentiary record. Generally, the assertions of counsel are not evidence. *State v. Green*, 140 Or App 308, 317 n 11, 915 P2d 460 (1996). However, in the context of sentencing, courts may rely on assertions of counsel determined to be "reliable." *State v. Balkin*, 134 Or App 240, 242, 895 P2d 311, *rev den*, 321 Or 397 (1995); *State v. McNeil*, 170 Or App 407, 412, 12 P3d 992 (2000). Although the court made no express reliability findings, no party on appeal disputes that the Washington conviction was properly before the court. Defendant did not object to the state's reference to the judgment nor claim that the prosecutor's description was unreliable. Accordingly, the Washington conviction was appropriately before the court and available for it to consider as it formulated defendant's sentence.

Nevertheless, the majority concludes that defendant's conviction does not qualify and that it essentially amounted to a conviction for first degree-negligent-but-not-impaired driving. It illustrates its conclusion through hypothetical drivers who sip but do not swallow, keep alcohol or drugs within reach while driving, drive negligently or recklessly and then cause accidents, but who, according to the majority, are not impaired. Would that it were so.

Impaired drivers place themselves and others at unnecessary risk of injury and death. And, yet, those struggling with alcoholism and other addiction disorders can recover and achieve sobriety. That is one reason why DUII diversion programs exist for first-time offenders. And it is a reason why drug and alcohol treatment programs are ordered as probationary conditions for repeat offenders. It cannot seriously be disputed that the risk posed by impaired drivers is significant and likely increases with each additional conviction for impaired driving. The increasing penalties for drivers who continue to drive impaired reflects reasonable and prudent intolerance for the risk that those drivers repeatedly create. Permanent license revocation removes the opportunity, at least in theory, for a repeat offender to exercise poor judgment about when he has sipped or swallowed too much to drive safely.

The trial court was well within its authority to revoke defendant's license because he was convicted of exactly the type of offense that the Oregon legislature intended to include as a predicate offense when it expanded ORS 809.235(1)(b) in 2007 to include the driving offenses described in subparagraphs (B) and (C). Accordingly, I dissent.

Egan, C. J., and DeVore and Tookey, JJ., join in this dissent.